FILED
2017 Sep-19 AM 08:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **BARRY TIDWELL,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:16-cv-00905-JEO |
| | ) |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of** | ) |
| **Social Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Barry Tidwell brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("Commissioner") denying his application for a period of disability and disability insurance benefits. (Doc.[2] 1). The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

disposition of the matter. (Doc. 14). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

On May 30, 2014, Tidwell filed an application for a period of disability and disability insurance benefits, alleging disability beginning April 18, 2014. (R.[3] 56, 115-16). His application was denied initially. (R. 56). Tidwell then requested a hearing before an Administrative Law Judge ("ALJ"). (R. 7-9). The hearing was held on July 14, 2015. (R. 28-55). Tidwell, his counsel, and a vocational expert attended the hearing. (R. 28). The ALJ issued a decision on September 25, 2015, finding that Tidwell was not entitled to benefits. (R. 10-23). The Appeals Council denied Tidwell's request for review on April 15, 2016. (R. 1-5). Tidwell then filed this action for judicial review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is

---

[3] References herein to "R. __" are to the page number of the administrative record, which is located at Docs. 7-1 through 7-12.

reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability insurance benefits under the Social Security Act, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). To be eligible for disability insurance benefits, a claimant must demonstrate disability on or before the last date he was insured. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing 42 U.S.C. § 423(a)(1)(A)).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform [her] past relevant work, in light of [her] residual functional capacity; and (5) can make an adjustment to other work, in light of [her] residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014) (citing 20 C.F.R. § 404.1520(a)(4)).[4] The claimant bears the burden of proving that he was disabled within the meaning of the Social Security Act. *Moore*, 405 F.3d at 1211. The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id.*

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

## IV. FACTS

### A. The Medical Evidence

Tidwell was 47 years old at the time of his hearing before the ALJ. (R. 115). He has a high school education and past work experience as a heavy machine operator, lay-out worker, and truck driver. (R. 21, 51, 152). He alleges that he has been unable to work since April 18, 2014, due primarily to the presence of "moderately severe back pain."[5] (Doc. 11 at 4).

The medical record reflects that Tidwell has a long history of back pain, which was exacerbated in August 2011 when he suffered a compression fracture (and fractured his ribs) in an all-terrain vehicle accident. (R. 470, 475). After a month recovering from the accident, Tidwell was able to resume his work as a machine operator but continued to complain of back pain. (R. 448, 452). His primary care physician, Dr. Cesar Romero, referred him for evaluation by pain management. (R. 448, 455). Tidwell was evaluated by Dr. Robert Thompson at North Mississippi Pain Management Center ("Pain Management Center") in October 2011 and was given a thoracic epidural steroid injection ("ESI"). (R. 375). He received a second ESI the following month. (R. 368).

Tidwell continued working in 2012 and 2013. In November 2013, Tidwell was seen by Dr. Romero and reported that his "chronic low back pain" had gotten

---

[5] In his disability report, Tidwell also alleged that he has been unable to work due to diabetes and depression. (R. 115).

worse over the past 2 to 3 months. (R. 402). However, examination did not show any positive straight leg raising tests and he was able to ambulate on his heels and toes. (*Id.*) Dr. Romero referred Tidwell to physical therapy. (*Id.*) The following month, Dr. Romero noted that Tidwell continued to have back pain and "did not tolerate" physical therapy. (R. 397).

Dr. Romero referred Tidwell to Dr. Walter Eckman, a consulting neurosurgeon at Aurora Spine-Centers Mississippi. Dr. Eckman examined Tidwell on January 13, 2014. (R. 352-54). His examination found normal flexion/extension, stability, and muscle strength in Tidwell's back and normal range of motion, straight leg raising, stability, and muscle strength in his legs. (R. 353). Dr. Eckman also reviewed Tidwell's MRI, x-ray, and CT images and noted that the most recent MRI of Tidwell's thoracic spine, performed the prior week, showed "diffuse disk degeneration, most marked T10-11, T11-12; healed anterior compression fracture T12 and possible compression T11; small disk herniations T11-12 and T10-11 central right; [and] no significant canal or foraminal compromise." (*Id.*) Tidwell informed Dr. Eckman that he wanted to try another ESI with Dr. Thompson. (R. 354). Dr. Eckman referred Tidwell to physical therapy and noted that he could "work regular duty." (*Id.*)

6

Dr. Thompson treated Tidwell with another ESI on January 24, 2014. (R. 357). Dr. Thompson noted that Tidwell had experienced "about 40-50% relief for quite some time" following his prior ESI treatments in 2011. (*Id.*)

Tidwell also received ongoing pain management care at the Pain Management Center.[6] (R. 627-652). He consistently reported back pain, muscle weakness, stiffness, and difficulty walking. (R. 629-30, 635, 640, 645, 650). He reported that his back pain worsened with sitting, lying down, and work but was better with walking and rest. (R. 627, 633, 638, 643, 648). He was prescribed a number of medications for his pain, including Norco (hydrocodone-acetaminophen), Opana (oxymorphone), and Zanaflex (tizanidine). (R. 631, 637, 641, 647).

On April 15, 2014, Dr. Romero determined that he needed to end his physician/patient relationship with Tidwell. (R. 388-92). Dr. Romero explained:

> … The patient wants me to write him off work since he has not been able to work for about 1 1/2 weeks. I was not able to evaluate him during that time …. I told him it would be difficult for me to document his need to be off work without me really evaluating him initially and referring him for neurosurgery.
>
> Of note, this patient has also been asking for some pain medications from me even though he was already being given some pain medications through the Pain Management Team. Patient

---

[6] It appears that the medical records from North Mississippi Pain Management Center were faxed from the Mantachie Clinic, where Tidwell's wife works as a nurse. This apparently led the ALJ to erroneously identify the records as Mantachie Clinic records, rather than North Mississippi Pain Management Center records. (R. 19). The error does not affect the substance of the ALJ's decision.

7

> noncompliance with regard to his other medical problems including NIDDM [non-insulin-dependent diabetes mellitus], hypertension, [and] hypercholesterolemia also has been an issue. I specifically told him I am very uncomfortable now following him and at this point I am also very uncomfortable writing a letter of excuse without me, myself, knowing exactly what was happening to him. …

(R. 388).

On May 28, 2014, Tidwell was examined by Dr. Mark Prevost, an orthopedic surgeon at Southern Orthopedic & Sports Medicine. (R. 273-76). Tidwell complained of "some lower thoracic pain," "muscle spasms in his lower back," and "low back pain." (R. 275). He reported that his pain had worsened over the past 6 or 7 months and that he experienced increased pain with sitting and lifting. (*Id.*) Dr. Prevost's examination found Tidwell to have decreased range of motion of the lumbar spine but otherwise to have normal motor strengths of 5/5, normal reflexes, intact sensation to light touch, and palpable pulses bilaterally. (*Id.*) Tidwell also had a negative straight leg test. (*Id.*). Dr. Prevost advised Tidwell that he wanted to get a current MRI scan of Tidwell's lumbar spine and a CT scan of his thoracic and lumbar spine before considering surgery. (*Id.*) Dr. Prevost kept Tidwell off work until his next visit. (*Id.*)

Dr. Prevost met with Tidwell again on June 13, 2014, after Tidwell's updated MRIs and CT scans were performed. (R. 280-81). Dr. Prevost commented that Tidwell's "biggest complaint is that of axial thoracic pain which is almost crippling to him to the point where he can no longer work." (*Id.*) Dr. Prevost noted

8

that the CT scans of Tidwell's thoracic and lumbar spine showed "fairly severe degenerative changes throughout his whole entire thoracic spine" and "several areas of nerve impingement as well." (R. 281). He further noted that Tidwell's lumbar MRI and CT scan revealed "some fairly severe stenosis at L4-5 and L5-S1" and "very large disc herniations" that were becoming calcified and causing both central stenosis and foraminal stenosis. (*Id.*) Dr. Prevost determined that Tidwell was not a good candidate for surgery and expressed his opinion that Tidwell was "totally disabled at this point." (*Id.*) He recommended that Tidwell apply for disability and wrote him off work "indefinitely." (*Id.*) He did not schedule any follow-up visits.

Throughout the remainder of 2014 and the first half of 2015, Tidwell continued to receive pain management care at the Pain Management Center. (R. 581-626). He was prescribed Norco, Zanaflex, and MS Contin (morphine sulfate) for his pain. (R. 585, 590, 595-96, 602, 608, 614, 620, 626). From May 2014 forward, Tidwell consistently reported that his medications were helping with pain relief. (R. 582, 587, 592, 598, 604, 610, 616, 622). He also reported that he was more active and mobile with less pain, was performing activities of daily living including cooking and cleaning, and was able to get in and out of a car and in and out of a chair. (R. 587, 592, 598, 610, 622). Beginning in October 2014, he reported that he was sleeping better at night. (R. 582, 587, 592, 598). He also

9

reported "playing with [his] children" as another daily activity as of December 2014. (R. 592, 587).

### B. Tidwell's Testimony

At the administrative hearing, Tidwell testified that he stays at home during the day and takes care of his young son, who was 14 months old at that time. (R. 39-43). Although he does not pick up the child, he is able to feed him and change his diapers. (*Id.*) Tidwell said that he spends four to five hours a day sitting or reclining but cannot stay in one position for very long. (R. 45-46). He estimated that he can sit for one hour at a time, stand for ten minutes, and walk 100 yards. (R. 45-46). He has problems sleeping at night, which he identified as his "number one chief complaint." (R. 50). He rated his level of back pain as a five (on a scale of zero to ten) when he is on his medication and an eight or nine without his medication. (R. 47).

## V. FINDINGS OF THE ALJ

The ALJ found that Tidwell has severe impairments of degenerative disc disease, degenerative joint disease, and diabetes mellitus.[7] (R. 15). She determined that these impairments could reasonably be expected to cause Tidwell's alleged symptoms, but that Tidwell's statements concerning the intensity, persistence, and

---

[7] The ALJ also found that Tidwell is obese and suffers from hypertension, hyperlipidemia, and depression, but that none of these impairments is severe. (R. 15-16). Tidwell has not challenged these findings.

10

limiting effects of his symptoms were not entirely credible. (R. 18). After considering the evidence of record, the ALJ found that Tidwell had the residual functional capacity ("RFC") to perform light work with certain restrictions, including no more than four hours standing and/or walking in an eight-hour day and the option to change positions (sit or stand) for one to two minutes every hour.[8] (R. 25).

Based on the testimony of the vocational expert, the ALJ found that Tidwell could not perform any of his past relevant work, as all of that work required a level of physical exertion above the light level. (R. 21). She further found, however, that there were a number of light-level jobs in the national economy that Tidwell was capable of performing. (R. 22). The ALJ concluded that Tidwell was not under a disability at any time from his alleged onset date of April 18, 2014, through the date of the decision. (R. 23).

## VI. DISCUSSION

Tidwell argues that the Commissioner's decision should be reversed and remanded because the ALJ failed to properly evaluate the credibility of his complaints of back pain. (Doc.11 at 4-10). As a general rule, "credibility determinations are for the ALJ." *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir.

---

[8] Residual functional capacity is the most a claimant can do despite his impairment(s). *See* 20 C.F.R. §404.1545(a)(1). Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

1984). "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). "The question is not … whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ must articulate "explicit and adequate reasons" for discrediting a claimant's subjective testimony regarding pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[T]he ALJ need not cite to 'particular phrases or formulations' to support the credibility determination, … [but] must do more than merely reject the claimant's testimony, such that the decision provides a reviewing court a basis to conclude that the ALJ considered the claimant's medical condition as a whole." *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 849 (May 3, 2017) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted)).

     Here, the ALJ found that Tidwell suffers from the severe impairments of degenerative disc disease and degenerative joint disease (as well as diabetes mellitus) and that these impairments could reasonably be expected to cause his alleged symptoms. She further found, however, that Tidwell's statements concerning the intensity, persistence, and limiting effects of his symptoms were not

entirely credible. Tidwell acknowledges that the ALJ articulated "several reasons" for her negative credibility finding, but argues that none of the reasons are supported by substantial evidence. (Doc. 11 at 5). He asserts that "[t]he objective medical evidence together with [his] longitudinal treatment history overwhelmingly supports his testimony of the presence of debilitating pain and limitations." (Doc. 11 at 9-10). The Commissioner responds that the ALJ's decision is supported by substantial evidence. (Doc. 12 at 3-9). The Court agrees with the Commissioner.

In his discussion of the medical evidence and his treatment history, Tidwell points to the medical evidence of degenerative disc disease throughout his thoracic and lumbar spine, his complaints of progressively severe back pain, and his extensive involvement with the Pain Management Center for his back pain, all of which he claims supports his testimony of debilitating pain and limitations. He argues that the ALJ "could have reached her determination only by ignoring [this] objective evidence and … treatment history." (Doc. 11 at 9). The Court does not agree.

Tidwell's discussion of the evidence, while otherwise thorough, never confronts the ALJ's findings regarding the effectiveness of his pain medications. The relevant factors considered by an ALJ in evaluating a claimant's symptoms include "[t]he type, dosage, effectiveness, and side effects of any medications" the

claimant takes to alleviate pain. 20 C.F.R. § 404.1529(c)(3)(iv). Here, the ALJ found that Tidwell's back pain is "stable with medication"; that he "has been prescribed and has taken appropriate medications … that have been relatively effective in controlling his symptoms"; and that he "has not alleged any side effects from the use of these medications." (R. 19, 20). Substantial evidence supports these findings. In particular, as noted above, the Pain Management Center records from May 2014 (the month after Tidwell's alleged onset date) through June 2015 reflect Tidwell's consistent reports that his medications were helping with pain relief, that he was more active and mobile with less pain, and that his daily activities included cooking, cleaning, and (as of December 2014) playing with his children.[9] This evidence provides substantial support for the ALJ's determination that Tidwell's back pain was stable with medication and would not preclude him from performing a limited range of light work.

In his discussion of the medical evidence, Tidwell also points to the opinion of Dr. Prevost, one of his consulting neurosurgeons, that he was "totally disabled" as of June 2014. (Doc. 11 at 8; R. 281). The weight afforded a medical source's opinion on the nature and severity of a claimant's impairments depends upon the examining and treating relationship between the medical source and the claimant, the evidence the medical source presents to support his opinion, how consistent the

---

[9] In July 2014, Tidwell reported that his medications were "effective for pain." (R. 610).

opinion is with the evidence as a whole, the medical source's specialty, and any other factors that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). An opinion from a treating medical source is generally given more weight than an opinion based on an individual examination of the claimant, such as a consultative examination. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An opinion from a consultative examiner who examined the claimant just one time is not entitled to great weight. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (noting that a consultative psychologist's opinion was not entitled to great weight because she examined the claimant on only one occasion); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (stating that a doctor who examines a claimant on only one occasion is not a "treating physician"). "Additionally, the Commissioner, not a claimant's physician, is responsible for determining whether the claimant is statutorily disabled. 20 C.F.R. § 404.1527(d)(1). Specifically, '[a] statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the Commissioner] will determine that [the claimant is] disabled.' " *Forsyth v. Comm'r*, 503 F. App'x 892, 894 (11th Cir. 2013).

Here, the ALJ gave Dr. Prevost's opinion little weight and explained his reasons for doing so:

> [O]n June 13, 2014, Dr. Prevost stated that [Tidwell] was not a candidate for surgery; yet, he thought [Tidwell] should file for

15

> disability, and believed "he is totally disabled and will write him off work indefinitely at this point as he applies for disability." The undersigned gives this opinion little weight, as the record does not establish a treating relationship between [Tidwell] and Dr. Prevost. According to the medical evidence, Dr. Prevost saw [Tidwell] on only two occasions, May 28, 2014 and two weeks later on June 13, 2014. The opinion of Dr. Prevost is apparently based on [Tidwell's] allegations regarding his subjective pain complaints, as he noted "his biggest complaint is that of axial thoracic pain, which is almost crippling him to the point where he can no longer work." Moreover, the examination findings by Dr. Prevost showed only a limited range of motion, with normal motor strengths of 5/5, normal reflexes, negative straight leg raising test, intact sensation to light touch, and palpable pulses bilaterally. These clinical findings are clearly inconsistent with [Tidwell's] subjective complaints.

(R. 21) (exhibit citations omitted). The Court also observes that Dr. Prevost's opinion conflicts with the assessment of Tidwell's other consulting neurosurgeon, Dr. Eckman, who just six months earlier cleared Tidwell to "work regular duty." (R. 354). In addition, as the ALJ noted elsewhere in her decision, there is no indication in the Pain Management Center records that Tidwell "was ever given any restrictions regarding his work activity or daily activities."[10] (R. 19). For all of these reasons the Court is satisfied that the ALJ was warranted in giving little weight to Dr. Prevost's opinion that Tidwell was totally disabled, which is a determination reserved to the Commissioner.

---

[10] As previously noted, the ALJ erroneously identified the Pain Management Center records as Mantachie Clinic records, an error that does not affect the substance of her decision.

16

The ALJ also expressed two other reasons for discrediting Tidwell's testimony, neither of which is directly addressed by Tidwell in his brief. First, the ALJ considered Tidwell's work history:

> [Tidwell] does have a steady work history for many years and … reported [that] he stopped working on April 18, 2014 "because of my condition." However, according to the medical evidence, there is no evidence of a significant deterioration in [Tidwell's] medical condition at that time. A reasonable inference, therefore, is that [Tidwell's] impairment(s) would not prevent performance of that job, since it was being performed adequately at the time he was laid off.

(R. 20) (exhibit citations omitted). Second, the ALJ noted that there were "several instances of subjective statements" by Tidwell that "tend[ed] to detract" from his credibility:

> For example, [Tidwell] testified at the hearing that he did not walk his dogs; he only opens the door for them to go out …. Yet, on the "Function Report-Adult" form, his wife completed the form and stated that he cares for their pets by "walking small dog." Another inconsistent statement is that [Tidwell] testified at the hearing that his wife performed the household chores. However, on the "Function Report," it indicates that on a daily basis he assists with laundry and washing dishes. Again, at the hearing, [Tidwell] denied any substance abuse; yet, the records of [the Pain Management Center] indicate a urine drug screen was positive for cocaine in December 2014. While these inconsistencies are not the ultimate factor in deciding [Tidwell's] case, they are integral to assessing [his] credibility and the allegations he has set forth.

(R. 20) (exhibit citations omitted). The Court also notes that Tidwell's testimony regarding his daily activities was inconsistent with the notations in his Pain Management Center records that his daily activities included cleaning.

Finally, the court is mindful of the two standards that inform its decision here. First, it is Tidwell—the claimant—who bears the "very heavy burden" of proving that he is disabled within the meaning of the Social Security Act. *Moore*, 405 F.3d at 1211 (11th Cir. 2005). Second, "[i]f the Commissioner's decision is supported by substantial evidence, [the] Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted). Having carefully scrutinized the record, the court is not satisfied that Tidwell has met his very heavy burden of proving that he is disabled and unable to engage in *any* substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A) (disability is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment"). Tidwell is certainly correct that the medical evidence and his longitudinal treatment history confirm that he suffers from back pain. Indeed, the ALJ explicitly found that Tidwell "does have complaints of pain with doing any heavy exertional activity" (R. 20) and that his degenerative disc disease and degenerative joint disease are severe impairments rendering him unable to perform his past relevant work, which required at least medium physical exertion. (R. 15, 21). However, premised on her review of the entire record, the ALJ determined that Tidwell had the RFC to perform a limited range of light work. The overall record provides substantial evidence to support the ALJ's determination and does not

necessarily support a determination that Tidwell cannot perform even the limited range of light work assessed by the ALJ.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An appropriate order consistent with this opinion will be entered.

**DONE**, this the 19th day of September, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge